Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Good morning, everybody. Please be seated. We have three cases we're hearing this morning and we'll begin with Braswell v. Smith and Ms. Lyson, whenever you're ready. May it please the Court, Jenny Lyson for Quentin Braswell. Your Honors, we are asking you to vacate the District Court's dismissal of Mr. Braswell's 2241 petition and hold that under the test that this Court laid out in United States v. Wheeler, that Mr. Braswell is indeed entitled to file a traditional writ of habeas via the Savings Clause of 28 U.S.C. Section 2255e. That Savings Clause allows a federal prisoner to file a traditional writ of habeas when 2255 proves ineffective or inadequate to test the legality of his detention. The Savings Clause comports with the Supreme Court's observation that the privilege of gives the prisoner a meaningful opportunity to demonstrate that he or she is being held pursuant to the erroneous application or interpretation of relevant law. Mr. Braswell has not yet had a meaningful opportunity to test his fundamentally defective sentence because at the time that he filed his 2255, the substantive change in law brought about by Simmons was not yet retroactive. And so as the District Court and the government acknowledge, at the time that Mr. Braswell filed his 2255, Simmons was of absolutely no value to him and he could not get relief under that. And when, and in fact, his 2255 was denied because, for one of the reasons why, because he did argue Simmons, correct? Absolutely. He did argue Simmons. So he had the benefit of Simmons at the time? He had the benefit of Simmons, but Simmons was not yet retroactive. And that's what this Court was saying at the time. It said that in Jared Wheeler's case. And it was continued to say that throughout the relevant time period up until Miller, of course, when this Court determined that Simmons was indeed retroactive. Did he appeal that denial at first? He did not, Your Honor, but Wheeler does not require him to appeal that. Wheeler nowhere states that the prisoner must exhaustively pursue all appellate remedies. That was nowhere the test. And, of course, I don't think that is a test that this Court would want to impose for a number of reasons. First, it would be extraordinarily difficult to administer. It would require looking at the procedural history of each and every case to determine whether this prisoner has exhausted all appellate remedies. It would, of course, also result in an exponential increase in frivolous filings with this Court and with the Supreme Court if this Court were to say that in order to preserve or protect your 2241 rights, you are required to exhaustively appeal the denial of your 2255. Well, but I suppose he could have done what the petitioner in Miller did, right, and seek to hold Simmons retroactive in his case, and he didn't do that. He did not, and technically I suppose he could have, but there was no subtle barrier to Jared Wheeler receiving a retroactivity determination in his case either. But, of course, he did seek that, and this Court said, no, Simmons is not retroactive. And I would also like to point out that when the district court denied Mr. Braswell's 2255 petition, he was for the first time pro se. He had been represented on appeal. He had been represented on the 2255 motion, but when the 2255 motion was denied, he was for the first time pro se, and the district court specifically denied him a certificate of appealability. So in effect, the district court was telling Mr. Braswell, no, you can't appeal this to the Fourth Circuit. And so I think as a reasonable litigant trying to navigate the very difficult habeas litigation, Mr. Braswell took the district court at its word and said, okay, I can't appeal to the Fourth Circuit. He instead filed a series of pro se motions with the district court, with the district court then construed as a request to file a successive 2255 petition and told Mr. Braswell, no, you must go to the Fourth Circuit for authorization. You can't come to me. And so at that point, you see Mr. Braswell filing a pro se motion with this Court seeking authorization to file a successive 2255 petition, which, of course, this Court denied because, of course, Simmons is not a constitutional rule, and so Mr. Simmons cannot file a successive 2255 petition. With respect to Wheeler's second prong, I mean, read literally, your client's claim would fail, right, if you read that literally to require both a substantive change in law and retroactivity subsequent to the prisoner's direct appeal. Is that right? If you read the Wheeler test in complete isolation, I think it is rather ambiguous. I think when you read the rest of Wheeler, Wheeler makes it abundantly clear that it is the retroactive change in law that is critical. The very beginning — Obviously, Wheeler didn't address the issue that's before us today. It did not. And those facts were not before the panel in Wheeler, and, of course, I'm delighted — You should ask the author of Wheeler. I'm delighted to have Judge Thacker with us today. The author of the ambiguous legislation. Well, and, Judge Thacker, I would just remind you that at the very beginning of the opinion in Wheeler on page 419, I submit that Mr. Braswell is in the exact same position as Mr. Wheeler. Appellant satisfies the requirements of the savings clause as dictated by our decision in In re Jones because a retroactive change in the law occurring after the time for direct minimum unduly increased resulting in a fundamental defect in his sentence. That is precisely what has happened to Mr. Braswell. The government does not contest that Mr. Braswell meets prongs one, prongs three, and prongs four of the Wheeler test. Again, when you go on and you really look, this is the heart of Wheeler on page 429 explaining the timing and the retroactivity. Next, that change in law must have been made retroactive on collateral review. Otherwise, the prisoner would not be able to test the legality of his detention in a 2241 proceeding, which is the ultimate goal of the savings clause. And the retroactive change in law could not have occurred before direct appeal or the initial 2255 petition. Mr. Braswell falls within the second prong of the Wheeler test because his first 20, his direct appeal and his 2255 petition did not occur before the retroactive change in the law. So we contend that he does fall within the second prong of Wheeler. There are a couple of points that the government made in its response brief that I neglected to address in my reply, so I'd like to take the opportunity to do that now. The first, Judge Thack, obviously the government points to your statement in the denial for rehearing on bonk in Wheeler. It is not precedent. It is not precedent, obviously, but the government neglects to point out that right after you say what is perhaps an ambiguous statement, your statement is at the heart of the Wheeler test is the requirement that the retroactive change in precedent creates a fundamental defect. Again, it is the retroactive change in law that is important. And I, because you can't have one without the other. The prisoner is not going to have a viable claim unless and until that change in law is made retroactive to begin with. And I would also point out that as careful as I know that all of the judges are on this permutation and application of language, it's simply not always possible to think about every fact scenario that's going to come before the court. So Judge Thacker, of course I defer to you, but I'm not sure that you had in your mind at that point when you were writing that sentence, petitioners like Mr. Braswell who filed after Simmons but before Miller. The next point that the government makes, well actually I think we've already covered that. The fact that there was no settled barrier to a retroactivity ruling. Again, that's not the test in Wheeler. I don't think that is a test that this court would want to impose. You addressed the issue of the waiver of collateral attack? I was just going to get to that. If there are no other questions on the first issue. So the government rightly concedes that if this court determines that Mr. Braswell meets all four prongs of the Wheeler test, then the plea waiver does not prevent him from gaining relief now. Well the government agrees that he meets the fourth prong. He does. They do. The government concedes that this is a fundamental defect. Of course they disagree basically with Wheeler, but respectfully note that this argument is now precluded by Wheeler's finding that this is a fundamental defect resulting in a miscarriage of justice. And it's just a fact that parties to a plea agreement when you're going through the negotiation, and it is a very one-sided negotiation at that when you're dealing with the government, simply do not negotiate with the understanding that when they go into a sentencing proceeding that that sentencing proceeding is going to be fundamentally defective and that the statutory range that everyone thinks should apply is in fact an incorrect statutory range. And there's certainly nothing in the plea agreement that says anything along the lines of, yes, this is the statutory range, but if it turns out to be completely wrong and the whole sentencing proceeding is fundamentally defective, I waive all my rights nonetheless. It doesn't say the opposite of that. It doesn't say you preserve all your rights. This court has said, of course, held again and again, that it will refuse to enforce an otherwise valid plea waiver if to do so would result in a miscarriage of justice. And so our position is that this court in Wheeler said that this kind of fundamental sentencing defect results in a miscarriage of justice. And for those reasons, we think the plea waiver as the government, I'm sorry. I apologize. I was just going to... I was just going to say that, you know, I think the government is rightly conceding this point. So, and I'll ask the government that, but Wheeler didn't involve a waiver of appeal or collateral attack or at least didn't discuss that. It didn't discuss that because in that he did have a plea agreement with a plea waiver, but the government did not stand on the waiver. And so this court didn't have the opportunity to address it. What's your position on how, is it your position that Wheeler affects the Archie and Copeland cases that talk about changes in law, not, you know, having the effect of, you know, taking the waiver, the applicability of the waiver away? I think at bottom, my position is that if you, this is a very narrow test that Wheeler lays out. I think it's certainly not going to apply to a lot of people. Not a lot of people are going to be able to jump through all of these hoops. I think that if you can jump through all these hoops and get to the point where you are showing that your sentencing proceeding was fundamentally defective, and it also, of course, Wheeler talks about that this also has constitutional implications. This particular sentencing defect affects due process, separation of powers, liberty. I think once you can jump through all those hurdles, that the plea waiver should not bar your claim to relief. How is this case different from Foote? And why doesn't Foote cut against your argument here? So I certainly didn't mean to muddy the waters by throwing in Mr. Braswell's erroneous career offender designation. He was sentenced under an advisory career offender designation, so it's not like Lester v. Flournoy. But I did think it was important when comparing and contrasting Mr. Wheeler's case to Mr. Braswell's that this Court understood that he was sentenced under an erroneous guideline. The reason that Foote doesn't apply is that here Mr. Braswell suffers from the same fundamental sentencing defect as Mr. Wheeler in that the Court applied an erroneous mandatory minimum with the sentencing range. So the entire statutory range was incorrect, and as was the career offender designation. And of course, the test in Wheeler never ties the actual sentence that Mr. Wheeler receives to the analysis. In fact, Wheeler says it doesn't matter what Mr. Wheeler would receive on remand. So the fact that Mr. Braswell received 262 months, which was at the very bottom of that erroneous guideline range, and Mr. Wheeler received 120 months makes no difference to the Wheeler analysis. If the panel has no further questions, I will reserve the remainder of my time for rebuttal. Thank you very much. Thank you, Your Honors. We'll hear from the government. May it please the Court, Evan Rickey on behalf of the United States. Your Honors, as stated in our briefs, the government is here today asking this Court to affirm the judgment of the District Court, which dismissed Mr. Braswell's 2241 petition. Before I get to the substance of the arguments that I'm going to be making, I did want to note that in Ms. Lysen's reply brief, she pointed out an error that we had made in our brief, which was misidentifying one of the predicate convictions, which led to his now erroneous designation as a career offender. That was an error on our part, and I wanted to just apologize to the Court for that error. The second issue that she pointed out is, you know, what is the statutory maximum that Mr. Braswell should be eligible for? I think it would be zero to 20 if he's deemed to be eligible for First Step Act relief, but it may be five to 40, it may be zero to 20, but either way, we acknowledge the fact that it was an improper statutory benchmark that he was sentenced under, and hence our concession on the fourth prong. Our simple point was that if this were to be sent back, the district court could resentence him to exactly the same sentence, because there is the drug conviction under 841, but there's also the 924C conviction, which has a minimum of five years and a maximum of life. So we just wanted to clarify that point. As to the second prong of Wheeler, it is our position, as we stated, that you have to have both. You have to have the change in law, and it has to be retroactive, and I think the timing of Wheeler compared to the timing of Braswell is important to keep in mind. There's an important distinction. In Mr. Wheeler's case, his direct appeal was in 2009. He filed his first 2255 motion in June of 2010. Simmons came in 2011. By contrast, in Mr. Braswell, his direct appeal was in May of 2010. Simmons came in August of 2011. He filed his first 2255 motion in March of 2012, citing to Simmons. So it is our contention that there's a fundamental difference, and as the court said, plain language of the rule and ---- Well, there is a difference, but why does that matter substantively? It matters substantively, Your Honor, because the second prong states that the settled in Wheeler. There wasn't any question about that. But now that we're faced with that, I'm asking you, why does your rule make any sense? Other than that, it appears to map on to the language of the Wheeler decision. Well, Your Honor, in trying to understand and apply this test in Wheeler to the facts that we have, we go by the language in the opinion, which says, and it talks about both the change in substantive law plus it being deemed retroactive. So we're going by the text of the opinion and Judge Thacker's statement, granted, which is not precedential, but that's one of the things that we're looking at as we're trying to apply the test to this peculiar set of circumstances where we have someone who's filing their 2255 after Simmons but before Miller, which made Simmons retroactive. So it's an unusual time, but that is the sort of temporal sort of scenario that we're faced with, and we're trying to apply it to that. Aside from that, we understand factually the difference, but is there a reason, a justification for having that difference affect the outcome in the case? Yes, Your Honor. So I think one of the arguments that Ms. Lyston made was essentially an equity argument that it wouldn't be fair for Mr. Braswell, who just filed too soon. And our response to that is that when a new rule is announced, some people fall within the ambit of the new rule. Some people fall outside the ambit of the new rule. We're not trying to be punitive. We're not trying to punish Mr. Braswell for filing when he did. But the fact of the matter is that he filed his 2255 motion. He cited to Simmons and it was dealt with on the merits. So 2255 was not inadequate or ineffective for him. Granted, he didn't get the result that he wanted, but that is one of the reasons. And secondly, Your Honor, nowhere does Wheeler say that you get a second bite at the habeas apple if you burn up your first 2255 before a new rule becomes retroactively applicable. It didn't sound like he had a choice. I mean, we're dealing with their time limits, obviously, with respect to these filings. So in some respects, this is beyond the petitioner's control. It is beyond all of our control, Your Honor, because there's no way anyone could have predicted. That's true. And so this is beyond everyone's control. And then, Your Honor, I think it's also we shouldn't lose sight of the 1996 EDPA rule law, which sort of tried to place limits on habeas, or rather on 2255 petitions. And so that's sort of the broader context as well that we're looking at. Does the government know, and you may not, how many people may fall in Mr. Braswell's situation after Simmons, but before? Yeah, I simply don't know, Your Honor. And this is one of the things we're attempting to determine. Part of this, obviously, is how many cases actually get filed, but the short answer is I don't know the answer to Your Honor's question. My guess is that it is not a very large number of people, because I think we'd be seeing a lot more of these if that were the case. But nevertheless, as I said, sometimes you have people falling within the ambit of a rule. Other times you have people falling outside the ambit of the rule. And there's nothing fundamentally unfair or unjust about that. Well, I mean, you're right. Anytime you have some sort of line that is part of a rule, that some people fall within it or not. But we keep asking you about the rule itself. Is there a justification before the rule other than the literal linguistic reading of the opinion? I don't mean to say that's not important, but I still haven't heard. I think a couple of us asked what would be the rationale for requiring someone like Mr. Braswell to have the substantive law change as opposed to the retroactivity, both be after his first 2255. And I don't think I've heard you give us an explanation why that should be the rule. I want to give you one more chance to see if there's a reason I'm overlooking at least. I appreciate that, Your Honor. And again, our argument to this Court is based upon the plain text of the opinion. And that's what we are going on, Your Honors. And are you, assume we don't take this any way other than as a hypothetical. Assume we rule against you on the Wheeler analysis. What's your position on the waiver in the plea agreement? It is our position, as stated in our briefs, that he does meet the fourth prong of Wheeler, that it is a fundamental defect, even if he could end up getting the same sentence at the district court. He does meet the fourth prong. It is our position he would be eligible for relief. As stated in our briefs, we recognize the binding effect of Wheeler. We do offer our respectful disagreement with it, and that's the position I think that the Department has taken. It's the position that I'm taking here today. But there's no issue from our perspective as to the fourth prong and the waiver issue. Do you think it matters at all that the Petitioner in this case didn't seek a certificate of appealability after the first denial of his habeas petition? No, Your Honor. I don't think it does. I still have a bit of time, but I don't have anything further. And unless there are no further questions from the Court, I have nothing further. Thank you very much. Thank you very much, Your Honors. Extremely briefly, Your Honors. Judge Diaz, I did want to point out that you were exactly correct. There was only a one-year limitation to Mr. Roswell filing his 2255 petition, and again, it was filed by counsel, and I believe that counsel waited as long as humanly possible to file that 2255 petition, probably hoping that Simmons would be made retroactive while the petition was pending. Because, of course, this Court dismissed Mr. Roswell's appeal on March 18, 2011, and counsel waited until March 10, 2012, to file that 2255 motion. So they were trying to get it in there right under the wire and try to bring the Simmons claim, and I'm sure hoping that it would be declared retroactive during the year-and-a-half that the district court was determining the petition. And I do appreciate, I think, that my colleague is admitting that the plea waiver will not bar Mr. Roswell, and I think that's when one party to the plea agreement is saying, we don't think the plea waiver bars the agreement, I don't think that this Court would stand on the plea waiver. And ultimately, I agree that the government never gave a statutory or policy reason for treating Mr. Roswell differently from Mr. Wheeler. So for all of those reasons, Your Honors, we would ask you to vacate the dismissal and find that Mr. Roswell is entitled to relief under Wheeler. Thank you, Justice Leisman.
judges: Albert Diaz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.